23-2-6-6-0, United States v. Todd Deutsch. Mr. Murphy. Good morning, Your Honors. May it please the Court and Counsel, John Murphy on behalf of Todd Deutsch. This is a meth conspiracy case, but I don't think it's your garden variety meth conspiracy case. It raises some particular issues that are important, specifically when multiple conspiracies are presented to a jury in the context of a rural, sparsely populated community like western South Dakota where this case was presented. As is obvious from my position in the brief, I think the jury's verdict was wrong in that there was insufficient evidence for the jury to convict Mr. Deutsch in this conspiracy, in the charged conspiracy. But I can't fault the jury for its verdict because the procedural position taken by the government and the strategy employed at trial was inherently confusing to a jury. And what I mean by that is there were two separate and distinct conspiracies presented to the jury. And I don't think the separateness of these two conspiracies is reasonably subject to dispute. Mr. Deutsch was a named conspirator in two different conspiracies, the LFF conspiracy and the Jackson conspiracy. He only went to trial on the Jackson conspiracy. At trial, he presented a separate conspiracy instruction. The government did not object, and the court so instructed the jury that there were separate conspiracies. In its brief at footnote 2, in this case, the government noted that these two conspiracies were, quote, different matters, unquote. But what happened, notwithstanding the recognition that there were two separate conspiracies at issue, during trial, the jury was presented with overwhelming evidence about Mr. Deutsch's conduct in regard to the case that he wasn't on trial for, the LFF conspiracy. That's a significant issue in this case. If you look at the trial transcripts, almost every fact witness was a person who was involved with the LFF conspiracy. All of the forensic evidence, the DNA that was lifted off the packages of cocaine and methamphetamine related to the LFF conspiracy. The recorded conversations of the controlled buy between Mr. Deutsch and Anthony Curry related to the LFF conspiracy. Mr. Curry, as testified to by LFF, was a primary source and then customer of she and Mr. Deutsch when they were involved in a conspiracy together. And so here the LFF matter and almost no evidence regarding the Jackson conspiracy. The same dynamic is being presented to the court in the government or by the government in its briefs. If you look at the government's briefs, it spends 15 pages reciting facts related to the LFF conspiracy. So just as it did at trial where it presented tons of facts to the jury regarding Mr. Deutsch's alleged involvement with LFF, here too in its brief it presents tons of information, tons of facts and assertions regarding LFF and almost nothing regarding Mr. Deutsch's alleged involvement in the Jackson conspiracy. My analytical framework for analyzing this case is to set aside all of the evidence presented regarding Mr. Deutsch's alleged involvement with LFF and her cadre of distributors and whatnot and see what's left. Why couldn't the government prove that there was interrelationship? I mean, when you plead guilty to a conspiracy charge, you usually get the government to agree not to bring any other conspiracy charges anywhere because conspiracies often overlap. And hypothetically, had there been facts linking or overlapping these two conspiracies, I'd agree with you completely, Your Honor. But in this case, there wasn't an overlap. Well, I'm not sure. I mean, all I've done, I haven't read the record other than the briefs, but the briefs suggest as the cooperator witness's testimony has described, there was considerable interaction, if not overlap, among the drug dealers. You know, and I don't think that's a fair characterization of the record. And the reason why is, and that's why I talked about in the beginning about the issue of sparsely populated areas, rural communities. There's no doubt that there was a fairly large group of drug users in this community. Many knew each other, but actual facts tying these two alleged groups of people together in a conspiracy is just nonexistent. And I'll point to the Todd Deutsch birthday party scenario as indicative of that. The group of people presented evidence that at Mr. Deutsch's birthday party, LFF was present as well as Mr. Jackson. But when she was questioned, LFF was questioned about that, all she could say was she didn't know who Brian Jackson was. She recognized him at the birthday party, but never spoke to him. So here's the two alleged kingpins of these two separate conspiracies. The only evidence linking those two people was they happened to be at a birthday party with many other drug users and people on one occasion. They didn't know each other. They never talked to each other. They never even used drugs together. That's how much the stretch was to try to get an overlap. If you look at the closing arguments, and I think that you got the instruction on separate conspiracies and different arguments are presented by the two sides as to what that really means. And essentially, as I read the government's closing argument, they're really saying that there's a spoken wheel conspiracy and Jackson is the hub. That that's really what they're arguing. They're saying it's really one conspiracy. They all fit together. And then you're arguing that there's a separate conspiracy in response to that, right? And you point to instruction 26. Not that the jury's heard it all. And then they make a decision, right? And ordinarily we say, well, you know, whether it's a single conspiracy or two conspiracies, we let the jury make that call because it's a profoundly fact-based question, right? And so we give great deference to their finding. Now you're saying that because of the nature of the grand jury's charging document, that there was a separate conspiracy and that case did not go to trial, that therefore, that the government was bound by their indictment to point out to this jury, there are two conspiracies. We concede there are two conspiracies. One conspiracy is the LLF conspiracy. One is the Jackson conspiracy. They have some interlocking pieces and here's how it fits together. And so there's some inherent argument that somehow they were foreclosed from making the spoken wheel argument or not. Well, our argument is that though they made that argument, there just aren't sufficient facts for the jury's verdict. Right. And so you're saying that if you look at the overlap and what people said about, well, prices are up because something was seized some places, that's this conspiracy, right? Or am I confused now? It wouldn't be the first time I'm confused. I've got, you know, we've got 30 cases we work with every month. But in any event, there was at the party, there's some conversation about what's going on, who knows whom, what's what. But you realize that not everybody knows each other. Not a fatal flaw in a conspiracy. Not everybody knows what everybody else's role is. But whatever happens there is just a description of what's been going on generally in the small drug community in a rural area, and it's not sufficient to explain a conspiracy. More or less. I mean, the government's argument was a spokes-on-the-wheel conspiracy. But the facts were, if that's the case, there were two different wheels. And going to Judge Loken's question, there really wasn't an overlap. That's why I think it's a confusion of the jury issue. I understand the jury was properly instructed, but in the context of this case, for the jury to separate out the fact that there were two separate conspiracies and almost no overlap was functionally impossible for a lay jury to do. And that's the inherent problem when the government presents a case like this, elects at the last minute essentially to dismiss the LFF conspiracy, just proceed on Jackson conspiracy, but then bring in this whole group of evidence. There was nothing indicating that LFF and Jackson had the same source, that they distributed amongst each other or to each other. We often see in these cases that if Distributor A runs short on dope, they get it from their competitor or what appears to be their competitor, and that's the link that even though they might have separate operations, they still work in a conspiratorial way. That just wasn't the case here. There's no evidence in this record of transactions between LLF and Jackson. None at all. None at all. Separate sources, separate geographical locations where they supposedly got their drugs, separate people. BW and all these other folks that worked with LFF had no connection whatsoever in the record to Jackson. And I only, I have to confess, I only read the closing arguments in light of the briefs, but I was curious, any evidence at all that says that when one of the conspiracies was short of methamphetamine, that meth moved as between the two groups? Because that, you know, usually in small rural areas, that's kind of the kiss of death for people claiming two conspiracies. Right. None that I recall, Your Honor. I'm pretty familiar with this record. Wasn't that kind of the trip to Colorado testimony? The... C.J. and G.M. Right. And they had no connection whatsoever to Mr. Jackson, didn't know who he was. They didn't even know Mr. Deutsch, but they were with Josh Sanders, and they were working with LFF. That was a connection to LFF. There doesn't appear to be any connection between C.J. and G.M. and Mr. Jackson. What about the witness who said he pooled Deutsch's money to go out and get more, in Colorado, and then somebody got ripped off on the way back, and so forth? Yeah, I'm not sure if it was Colorado or Utah. I may be wrong. There were a number of trips. That was B.W. She went down to Colorado. She was LFF's source. She didn't know anything about Mr. Jackson. She had no connection whatsoever. B.W. was a long-term first customer, then supplier to LFF. But again, there was no distinction or no connection drawn between her and Mr. Jackson or any of his associates at any time during the trial, Your Honor. I've got about a minute and a half left I'm going to reserve. Thank you. Thank you. Mr. Kelderman. May it please the Court and Counsel Eric Kelderman on behalf of the United States, I'm just going to address something that really didn't come up in counsel's argument just a moment ago, which is to clarify, even if we are just looking at a conspiracy between Todd Deutsch and Brian Jackson, there is evidence and significant amount of evidence that came from, I think the name, Robert Dodd was the gentleman's first name, and Johnson. The two of them talked about receiving methamphetamine at Jackson's place from Deutsch. Robert Dodd would go to the place without methamphetamine. If Jackson didn't have methamphetamine, he would wait. He would call Deutsch. Deutsch would arrive. Jackson and Deutsch would go into a separate room. They would talk. Then Dodd would go into the room and he would receive methamphetamine. It was on the table. That was after Deutsch arrived. Deutsch and Jackson were in a conspiracy together. They were selling and they were doing a number of things of dealing there. Deutsch was added. This is not necessarily reflected in the record, except that there was a separate indictment where Deutsch was added to Jackson or they were indicted together, and this was after a stop that was done. I believe it was in Edgemont, South Dakota, and that occurred of a vehicle that Deutsch was driving. They were tracking his location. When he arrived in South Dakota, he was pulled over, drug dog is called, and his vehicle is searched, and there was 789 grams of methamphetamine in that vehicle at the time of that stop. I think, as I pointed out, the record is clear that Dodd bought from Jackson and Deutsch together. I believe that it's clear that Deutsch and Jackson were dealing together. That 789 grams is during the indictment period or the conspiracy period alleged in the indictment. Right there is a conspiracy with those facts, and it's over 500 grams. So the evidence is sufficient with that alone. In addition, the United States disagrees that there was no overlap. There was overlap. It wasn't everywhere, but as we, as the United States put in its brief and argued at trial, it is a hub-and-spoke or a spoke-and-wheel conspiracy under slaughter precedent from this Court. Deutsch was the hub. He was in the middle of it. LFF and BW were drug dealers themselves. LFF met Deutsch by using with him but then started selling for him. Then, at times, she would sell Deutsch's methamphetamine to BW. So the argument, the claim that there was no drugs moving from the Jackson-Deutsch piece over to LFF or whatever, that that's belied by the record? Well, no, not necessarily. I mean, there are connections. And I guess what I'm trying to point out is that Deutsch was the connection between a number of individuals. It isn't that these people were strangers. It isn't that these were all separate conspiracies. It's just that in a drug conspiracy, I don't think that the evidence very often shows that everyone knows everyone else who is involved. And that's why this Court's precedent allows for the spoke-and-wheel conspiracies. What's Jackson's role? Because when I was looking at it, I thought perhaps Jackson was a hub in one of these conspiracies. Is that not true? I suppose that's a possibility, Your Honor. I had not really thought of it that way until this morning. I have just always thought that Deutsch was the connection between a number of different individuals. Just a single conspiracy, Deutsch is the center, and that while he has dealings with a number of different people and they're connected to a number of different people, he is the source. That's right. And a number of people, B.W., talked about Deutsch being LFF's plug, that he was the source. Now, at times, B.W. sold to LFF, of course, as well. But LFF talked about Deutsch's Blucksburg residence. It's just a neighborhood up by Sturgis, South Dakota. C.J. and G.M. both talked about money that either went to Deutsch or was picked up from Deutsch as they were on their way to Vegas to get methamphetamine. And that's the one where, on the way back, Sanders gets in the vehicle with them. Sanders gives C.J. and G.M. 10 to 11 ounces. They put it all in the back, along with two-and-a-quarter other pounds. Sanders talks about this is for Deutsch, or some of this meth is going to be for Deutsch. I don't know if it was all for him, but Sanders gets in the vehicle and says, we're bringing this back for Todd Deutsch. But to go back to what I was saying is they stopped at the residence to pick up money on the way there. C.J. talked about when Sanders would be in town from Las Vegas, that they would have to bring money to the Blucksburg residence. I'm trying to think. There was another individual that talked about Deutsch's residence. But eventually, at the residence, they find paraphernalia, scales, baggies, residue on a number of items. And then there's also this Airbnb incident where police, law enforcement, obtained a search warrant ultimately for this place. But there's a party going on there. Bruce Beckman is the guy who rents the place for Deutsch. Beckman talked about receiving a pound of methamphetamine over time from Deutsch for different work that he would do for him. But again, Deutsch is the middle of it. But at this party, to show a connection, not necessarily a drug connection, but a connection between these people, Jackson is there. LFF is there. LFF arrives, actually, to pick up methamphetamine from Deutsch. So it isn't that everyone here was a complete stranger. It's just that they didn't all know each other and they didn't all see Deutsch dealing with the others on numerous occasions. But Deutsch was intimately involved with all these different individuals. And his methamphetamine, when it arrived, again, he would go to Jackson's place and distribute to both Johnson and Dodd there. I believe Stout was another witness. Michelle Stout talked about knowing that Johnson was intimately involved or heavily involved in methamphetamine. I think she said it's his whole world. He was getting methamphetamine from Deutsch. Stout saw Deutsch with, I believe she said it was, a pound over a course of time. Dodd talked about seeing a huge bag, I believe he called it a gallon bag, full of methamphetamine at Jackson's place. So while these people are not all seeing each other during every transaction, Deutsch is busy. He's busy in Sturgis. He's busy distributing to Curry, another individual who, that's the other person that was at the Blucksburg residence. He went there first to buy from Deutsch that evening, but Deutsch didn't have anything. So he said, later on today I'll call you. Then they meet in Rapid City, about 25 miles away. They meet in Rapid City and they conduct a transaction, and it's for a full ounce. So again, Deutsch is the person that is distributing this all over the place to all these different individuals. The quantities were more than sufficient. Like I said, with Jackson getting pulled over, and we know that the two of them were intimately involved, with Jackson getting pulled over with 789 grams, that's enough right there. But a number of other individuals talk about getting over a pound of methamphetamine from Deutsch. LFF talked about getting a pound from him over time, or she said actually, she said over 500 grams in total.  BW talked about they were pooling money. Pooling money is the essence of an agreement. All the money that LFF, BW, and Deutsch put together for her to go to Denver to get methamphetamine, she ends up with fake meth, fake drugs that she comes back with and she gets in trouble. But it's the agreement that was the important thing. It's not the drugs that were actually obtained. And then, of course, there's the stop. There's the stop of Sanders, GM, and CJ, where they had the methamphetamine in the back of the vehicle, and that was roughly three pounds that came out of that. The Airbnb, there were 53 grams. I think there were two roughly ounce packages in that crawl space, in that place. And, again, those are all, that's methamphetamine that was attributed to Deutsch because it's with a sock that has his DNA on it. His DNA is on the baggies that it's in. All of this adds up to well over 500 grams in a number of different ways. Just simply, just simply with Jackson alone, there's well over 500 grams. But the United States asked this Court to affirm because all of these conspirators were part of the same conspiracy with Deutsch at the center. The evidence was more than sufficient, and the United States asked that the Court affirm his conviction in all respects. In the government's view, if the same person is a member of two conspiracies, that can happen. In other words, the jury can find separate conspiracies and still convict, right? Correct, Your Honor. The jury was instructed here. As the Court pointed out earlier, they received a proper instruction about separate conspiracies, and they heard the arguments, and they were able to find, clearly by their verdict, they were able to find that there was a conspiracy that involved over 500 grams of methamphetamine. The fact that there might be two doesn't mean that they are necessarily completely separate. There was overlap here. And so the United States asked that the Court or the United States believes that this is a situation where, while the overlap wasn't extensive as to why. Does there have to be an overlap? I suppose at some point, because there is precedent saying that separate conspiracies can't exist and there's a reason for the instruction. A single person can be a member of two conspiracies. Can be a member of five conspiracies. One can be on the east side of town and one on the west side of town. Correct, Your Honor. And I understand that there is, you know, there's this jury instruction and there's precedent from this Court and other courts saying that separate conspiracies can't exist. But here, even if there were a number of different conspiracies, if you want to strictly separate them out that way, there was overlap. And that's the reason for the hub and spoke language and the case law that interprets that and allows for that to be a way that a conspiracy may be proven. Inherent in the defendant's appeal is the argument that if there are separate conspiracies, the jury must unanimously conclude on which conspiracy the defendant's a part of, right? So if you have the defendant's part of two conspiracies, you can't have six people find that you're part of one and six people find out you're part of another. And so it seems to me that in this particular case, that the way this jury was instructed and the way the jury verdicts constructed, that it seems likely to me that they had to find the existence of a single overlapping conspiracy to which Deutsch was a member and involved more than 500 grams. I believe that the jury instructions called for that properly. The instruction that the defense requested was given, and the jury was instructed just as requested, and they made the finding. And of course, their argument was there's two conspiracies, I'm not part of this one, and that's the one where all the drugs and all the bad stuff was, right? And so I'm innocent as charged. That was the argument. Right. And the jury was confronted with that factual conundrum, and they came to a verdict unanimously. After being properly instructed. Thank you, Your Honors. Mr. Murphy for rebuttal. Thank you. Just a couple points of clarification. It might have just been a misstatement inadvertently by Mr. Kelderman. He indicated that Mr. Deutsch was driving in a vehicle that had 789 grams. That's just not accurate. Mr. Deutsch was never caught in any vehicle with any methamphetamine. I believe what he was referring to is Mr. Jackson. There was testimony Mr. Deutsch never left the area of Sturgis, Rapid City. Regarding the initial argument by the government that regardless of the LFF conspiracy that there was sufficient evidence regarding the Jackson conspiracy, the only evidence presented regarding Mr. Deutsch's involvement with Jackson was that on four or five occasions, Mr. Dodd believed from his own observations, though no direct evidence, that the source of methamphetamine he got, small gram and gram amounts, came initially from Deutsch through Jackson. He didn't have any direct proof of that. He said the total he received added up to about a half ounce, 14 grams. Going to this issue about the overlap and whatnot, Mr. Kelderman repeatedly referenced that there was connections. Well, that's small communities. But the people that were involved in these two conspiracies remained distinct and separate, and there wasn't sufficient evidence to convict Mr. Deutsch of the Jackson conspiracy. Thank you. Thank you, counsel. The case has been well briefed and argued, and we'll take it under advisory.